IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA GALVAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-3718 |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM AND ORDER ON
### CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Maria Galvan ("Galvan") seeks review of the denial of her request for supplemental security income payments under Title XVI of the Social Security Act ("the Act"). The Parties consented to have this Court conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c) and filed cross-motions for summary judgment. ECF Nos. 10, 12, 16. For the reasons given below, the Court **DENIES** Plaintiff's motion, **GRANTS** the Commissioner's motion, and **DISMISSES** the action **with prejudice**.

### I. BACKGROUND

Galvan has a high school education and limited work experience; she worked as a cashier for three different employers between 1988 and 1994, then briefly worked at a daycare in 2006[1] before quitting to care for her disabled daughter. R. 53, 186-187, 197, 213.[2] On September 26, 2012, Galvan filed an application under Title XVI for supplemental security income ("SSI") benefits alleging she became disabled beginning on February 27, 2012 when she was diagnosed

---

[1] Plaintiff earned $730.84 in 2006.

[2] R." references are to the Administrative Transcript/Record filed by the Commissioner. ECF Nos. 8, 9.

with stage 2 breast cancer. R. 176, 197. The Commissioner denied her claim. R. 101. Galvan requested reconsideration of her claim, alleging her condition had worsened and she now suffered from cancer, sleep apnea, fibroids, diabetes, bilateral carpal tunnel syndrome, and thyroid problems. R. 111. Her claim was again denied. R. 109.

Galvan then requested a hearing before an administrative law judge. R. 137-138. At the time of her hearing before Administrative Law Judge Paul W. Schwarz ("the ALJ") on March 11, 2014, Galvan was 46 years old. R. 29, 49-100. Plaintiff testified at the hearing, as did a medical expert, Woodward Janese, M.D., and a vocational expert, Karen Nielsen, Ph.D., both of whom testified on behalf of the state. R. 49-100. The ALJ issued a decision on June 18, 2014, denying Galvan's application for benefits. R. 26-41. On October 20, 2015, the Appeals Council denied Galvan's request for review after finding there was no basis for one, rendering the ALJ's decision final. R. 1-6; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision).

## II. ANALYSIS

### A. Standard of Review

The Social Security Act provides that an individual may seek judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party." 42 U.S.C. § 405(g). In performing that review:

> "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing. The findings of the Commission . . . as to any facts, if supported by substantial evidence, shall be conclusive . . . ."

*Id*. Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the Commissioner applied the proper legal standards in evaluating the evidence. *See id.* ("The

findings of the Commissioner . . . as to any facts, if supported by substantial evidence, shall be conclusive . . ."); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "Substantial evidence" means "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." *Id; Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A reviewing court may not reweigh the evidence in the record, retry the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Id.* At the same time, however, judicial review must not be "so obsequious as to be meaningless." *Id.* (internal quotation marks and citation omitted). The "substantial evidence" standard is not a rubber stamp of the Commissioner's decision. It involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *Singletary v. Brown*, 798 F.2d 818, 822–223 (5th Cir. 1986) ("[T]he substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the [Commissioner's] decision."). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever in the record fairly detracts from the weight of the evidence supporting the Commissioner's findings. *See Cook*, 750 F.2d at 393. A court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

To qualify for disability benefits, a plaintiff must prove she is disabled. A person is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The Commissioner must follow a five-step inquiry to determine whether a claimant is disabled, asking the following questions in sequence:

(1) Is the claimant presently engaged in "substantial gainful activity"? (Step One)

(2) Does the claimant have an impairment or combination of impairments that is "severe"? (Step Two)

(3) Are the claimant's impairments of a severity that meets or equals the criteria listed in the applicable regulations? (Step Three)

(4) Considering the claimant's residual functional capacity, do the impairments prevent the claimant from performing past relevant work? (Step Four)

(5) Considering the claimant's residual functional capacity and his age, education, and work experience, do the impairments prevent the claimant from performing other work? (Step Five)

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a); *Audler v. Astrue,* 501 F.3d 446, 447-48 (5th Cir. 2007). Before moving from Step Three to Step Four, the Commissioner assesses a claimant's residual functional capacity ("RFC") based on "all the relevant medical and other evidence" in the record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most she can still do despite her physical and mental limitations. *Id.* §§ 404.1545(a)(1); 416.945(a)(1). At Step Four, the Commissioner uses the claimant's RFC to determine whether the claimant can still perform past relevant work. The claimant bears the burden of proof on the first four steps of this inquiry. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005). At Step Five, the burden shifts to the Commissioner, who must show that, in light of the claimant's RFC, she can perform other substantial work in the national economy. *Id.* If the Commissioner makes that showing, the burden shifts back to the claimant, who must rebut the Commissioner's finding. *Id.*

### B. Plaintiff's Challenges to the ALJ's Decision

The ALJ determined that Galvan was not disabled at step five of the sequential analysis. R. 36-37. The ALJ found that Plaintiff has the residual functional capacity to perform "light work, [but] she can only occasionally reach overhead with her right upper extremity." R. 34. He also concluded that there were a significant number of jobs in the national economy she could do. R. 36.

Galvan insists the ALJ erred because he: 1) made an unclear RFC finding that prevents meaningful judicial review; 2) found that Galvan's carpel tunnel syndrome is not a severe impairment; and 3) did not properly develop the record regarding Plaintiff's mental impairments or find those mental impairments to be severe. The Court addresses each of these claims of error in turn.

#### 1. *Plaintiff claims the ALJ's RFC finding is unclear*

When an ALJ fails to adequately explain how he reached a decision so that a reviewing court cannot tell whether the decision is based on substantial evidence, the decision will not stand. *Audler,* 501 F.3d at 448 (reversing because the ALJ provided no explanation for the conclusion that plaintiff's impairments were not severe, and "such a bare conclusion [was] beyond meaningful judicial review.") (citation omitted). That is not the case here. The ALJ declared:

> "After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work, as defined in 20 C.F.R. 416.967(b), with her non-exertional limitations as stated in the text of this decision."

R. 34. It is the final clause of this statement that Plaintiff contends is "unclear." Plaintiff insists that, despite having "read through the ALJ's decision repeatedly," it is "impossible to determine which non-exertional impairments the ALJ actually intends to find limits Plaintiff's ability to

work." ECF No. 12 at 8. This is true only if one entirely ignores the next two sentences in the ALJ's decision. Immediately following the statement above, the ALJ wrote:

> "The claimant, I decide, can perform the exertional demands of light work, that is, that she can lift and can carry 20 lbs. occasionally and 10 lbs. frequently, with pushing and pulling the same, and she can stand, can walk, and can sit for 6 hours, all in the usual work-day, and all with normal breaks. **The claimant does have non-exertional limitations, though, in that she can only occasionally reach overhead with her right upper extremity—this [is] an effect of her surgery**."[3]

R. 34 (emphasis added). The ALJ describes no other limitations of any kind in his decision, so it is clear that he is referring exclusively to this limitation on the use of her right arm when he referenced a "non-exertional limitation." The ALJ has sufficiently described his residual functional capacity finding.

Galvan's real complaint is that the ALJ did not place even greater limitations on the use of her right arm. She contends that her testimony established she is unable to lift more than five pounds, reach overhead, or even reach straight out without pain. ECF 12 at 8. However, it is the ALJ who is responsible for determining a claimant's RFC, and the task of weighing the evidence is the province of the ALJ, not of this court. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (ALJ is responsible for determining RFC); *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (ALJ is tasked with weighing the evidence). On review, the inquiry is not whether conflicting evidence exists in the record, rather it is whether the ALJ's findings are supported by substantial evidence. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence. . . . ") (quoting *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989)).

---

[3] Plaintiff's confusion appears to come from the ALJ referring to the ability to reach overhead as a "non-exertional" limitation when Galvan considers it to be a physical, or "exertional," limitation. Whether the ALJ categorized the limitation correctly is irrelevant; it is clear from his opinion that he was referring to her ability to reach overhead. Because his intent is apparent, any error in describing the limitation may be excused as simply a scrivener's error. *Dukes v. Colvin*, No. 3:14-CV-173-BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015). Even so, a non-exertional limitation can affect the abilities to reach, hold, grasp, or handle. *See* Social Security Ruling (SSR) 85-15.

In reaching his decision, the ALJ considered Plaintiff's testimony that she cannot lift more than five pounds with her right arm, has difficulty writing, buttoning clothes, and reaching overhead. R. 35. He contrasted her testimony with that from Dr. Janese, who testified that Galvan was found to have normal motor and sensory function in her extremities during her physical examinations.[4] R. 33. The ALJ pointed out that there was "absolutely no support in the medical evidence for the claimant's reports of difficulty using her hands for fingering, gripping or grasping." R. 36. Plaintiff, in this appeal, points to none.[5] It is clear the ALJ carefully considered the evidence before him and found Galvan's testimony that she had difficulty using her hands to be less than credible in the face of the conflicting medical evidence and Dr. Janese's testimony. He did give credence to Plaintiff's claim that she "has difficulty using her arm."[6] R. 36. In these circumstances, substantial evidence supports the ALJ's RFC determination.[7]

---

[4] The medical records support this testimony. Plaintiff was found to have normal motor and sensory function on December 7, 2011 (R. 930), January 23, 2012 (R. 925), January 30, 2012 (R. 910), February 29, 2012 (R. 1720), July 22, 2012 (R. 826), August 14, 2012 (R. 980), August 31, 2012 (991), November 14, 2012 (R. 1227), November 20, 2012 (R. 1631), February 4, 2013 (R. 1082), May 15, 2013 (R. 1639-1640), June 13, 2013 (R. 1646), and July 17, 2013 (R. 1659). She was also noted, on several occasions, to have no weakness in her extremities, both before and after her mastectomy. R. 980, 991, 1082, 1220, 1233.

[5] Based on a review of the medical records, the Court notes that Plaintiff complained of numbness and tingling in her hands on January 4, 2007, but refused treatment at that time. R. 951. She then complained of numbness in her fingers almost five years later, in December 2011 (R. 929), and pain and aching in her hands the following month (R. 924). She complained of numbness, tingling, and weakness in her right arm on March 5, 2012. R. 960. Conversely, she denied finger or muscle pain on June 13, 2013 (R. 1645) and July 17, 2013 (R. 1658). She also denied having tenderness in the extremities and did not complain of numbness or tingling in her hands on September 20, 2012 (R. 1688), December 3, 2012 (R. 1684), March 4, 2013 (R. 1682), June 4, 2013 (R. 1676), and August 30, 2013 (R. 1672), even though she complained of a "frozen" shoulder (see fn. 6, supra) and numbness and tingling in the lower extremities at those visits. There are no complaints in the records that these transient conditions affected the use of her hands or fingers.

[6] The ALJ found "her difficulty using her right arm [to be] entirely understandable, given [her mastectomy], with the considerable muscle damage, and the quite likely formation of scar tissue at the surgical site," even though the medical records supporting this complaint were minimal. R. 36. Her oncologist, Dr. Mohamed Haq, noted that she had a "right frozen shoulder at 90 degrees" when he treated her after the mastectomy. R. 1672, 1676, 1682, 1684. Her family doctor, Anibal Rossel, M.D., however, did not record any problems with her shoulder during the same period despite completing regular physical examinations. R. 1631, 1640, 1643, 1646, 1659.

[7] Although Plaintiff describes the ALJ's analysis of each of her medical conditions, she does not argue that any other medical condition imposes any limitations on her, except as discussed further in this opinion.

*Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (stating that the ALJ has the responsibility to resolve questions of credibility and questions arising from conflicting medical opinions).

### 2. *Plaintiff claims AJL erred in finding her carpal tunnel syndrome is not severe*

Galvan next complains that the ALJ did not determine her carpal tunnel syndrome to be a severe impairment, and even if it was non-severe, he erred when he did not impose any limitations from it. It is necessary only to address the first part of this contention, as the propriety of the limitations imposed by the ALJ has already been discussed.

It is Plaintiff's burden, at Step 2, to show that she has a severe impairment. An impairment is severe only if it imposes more than a minimal limitation on the ability to perform work related activities. 20 C.F.R. §§ 404.1521, 416.921. "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).[8] In this case, Plaintiff has failed to show her carpal tunnel syndrome is a severe impairment.

Plaintiff argues that "the record contains objective testing, via a[n] EMG/NCV study that reveals 'bilateral advanced median nerve entrapment at the wrist (bilateral advanced carpal tunnel syndrome more marked on the right), and mild right ulna neuropathy at the elbow." ECF No. 10. But Dr. Janese questioned the validity of the test because it both: 1) contains invalid findings;[9] and 2) conflicts with the many physical examinations showing no sensory or motor

---

[8] Plaintiff suggests the ALJ applied the wrong standard for determining if the impairment is severe. ECF No. 12 at 11-12. The ALJ quoted and applied the correct standard from *Stone*. (R. 30).

[9] "Q: It says EMG of the paraspinal levels at C3, C4 through C5, [inaudible] showed no spontaneous activity. Is that of any significance in your mind? A. Yeah. That means he needs to get his equipment checked out. . . . He's saying that when he puts a needle into a functioning muscle, he gets no electrical response, which doesn't make a lot of

deficits.[10] Even so, the ALJ did not reject the diagnosis of carpal tunnel syndrome; he instead determined it was not a severe impairment because it did not cause any functional limitations. Galvan points to nothing in the record, other than her own testimony and her sporadic complaints of numbness and tingling in her hands,[11] to support her contention that the carpal tunnel syndrome affects her ability to work in any. R. 32. The ALJ discounted this testimony because of the numerous physical examinations that showed no problems with her hands.[12] R. 36. It was the province of the ALJ to weigh this evidence. There is substantial evidence to support his decision that Plaintiff's carpal tunnel syndrome is not a severe impairment, and did not impair her ability to use her hands.

### 3. *Plaintiff claims ALJ erred in finding her mental impairment is not severe*

In her last complaint of error, Plaintiff argues that the ALJ should have found Plaintiff's depression and anxiety to be a severe impairment, or in the alternative he should have further developed the record regarding the severity of those mental impairments. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure he makes an informed decision based on sufficient facts. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). Galvan insists the ALJ should have obtained a psychiatric evaluation and a psychiatric residual functional capacity assessment before denying her claim. ECF No. 12 at 13. An ALJ must order a

---

sense." (R. 93-94). "I have never seen a report that stated that they could not get any sensory report. What I would think is they probably had their electrodes either misplaced or else they didn't have any conduction under their electrode inputs on the fingertips. . . . I would repeat the EMG." R. 89.

[10] Dr. Janese testified, "If I assume that this report is positive or correct, then I would have to assume that the physical examination is incorrect." R. 94.

[11] See fn. 5, supra.

[12] In the function reports Plaintiff completed, her only complaint was that "completing tasks or using my hands affect[s] me because I get very tired and weak." R. 217. The function report her attorney's office completed on April 4, 2013 stated that using her hands caused pain, but did not identify any specific activity affected by that complaint. R. 242. The ALJ disregarded this report because Plaintiff did not prepare it or sign it. R.34

9

consultative evaluation only when such an evaluation is necessary to enable the ALJ to make the disability determination. *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). A consultative evaluation becomes "necessary" when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Reversal when the record was not fully developed is appropriate only if the applicant shows that she was prejudiced. *Cornett v. Astrue*, 261 F. App'x 644, 647 (5th Cir. 2008) (per curiam). Prejudice can be established by showing that, had the ALJ adequately performed his duty, he "could and would have adduced evidence that might have altered the result." *Kane*, 731 F.2d at 1220.

Plaintiff has not raised "a suspicion concerning a non-exertional impairment" that her depression or anxiety caused in either her testimony before the ALJ or in this appeal. That is because the record is entirely devoid of any such evidence. Plaintiff contends that she "has shortness of breath, palpitations and anxiety" and has been diagnosed with generalized anxiety disorder and depressive disorder. ECF 12 at 13. She argues that Dr. Janese agreed that depression is common in women—like her—who have been treated for breast cancer. *Id.* at 12. In doing so, Plaintiff is merely arguing a point that is undisputed: Plaintiff's treating oncologist and family doctor have treated her for, or diagnosed her to be suffering from, depression and anxiety.[13]

---

[13] Plaintiff's treatment for depression and anxiety was limited to medication. Galvan was first treated for anxiety when she presented to the emergency room on July 19, 2012, complaining of shortness of breath and feeling anxious after a round of chemotherapy. R. 825. She was given an anti-anxiety medication. R. 803. On September 20, 2012, Dr. Haq wrote a prescription for anti-anxiety medication even though she reported that she was not depressed or anxious at that time. R. 1688, 1690. Dr. Rossel renewed the prescription on November 13, 2012. R. 1630. On January 4, 2013 (R. 1682), and June 4, 2012 (R. 1676), she denied being depressed, and told Dr. Haq that her anxious spells were improved with the medication. She complained of frequent panic attacks and depression to Dr. Rossel on March 25, 2013, and he prescribed an anti-depressant. R. 1639. When she returned to Dr. Rossel on April 24, 2013, she complained of depression, but not anxiety. R. 1643. She acknowledged the symptoms improved during the day and were alleviated by medication. R. 1643. Dr. Rossel's examination of her psychiatric condition on June 13, 2013 was normal, with no complaints of depression or anxiety. R. 1645. He did not renew the prescriptions for anti-anxiety medication or anti-depression medication at that time, but restarted them on July 17, 2013. R. 1646, 1658.

The ALJ accepted these diagnoses, but did not find the conditions to be severe impairments. R. 33. He reached this conclusion after pointing out that, although Plaintiff had been prescribed medication for her depression and anxiety, she had not sought treatment with a mental health care provider.[14] R. 33. The ALJ noted that neither of the non-examining state agency medical consultants, Dr. George Carrion and Dr. Roberta Herman, even considered these conditions to be "medically determinable impairments" at the time of their assessments in January and April of 2013. R. 33. Dr. Janese also testified that he reviewed the medical records and "did not find any significant psychiatric problems." R. 76. Critically, the ALJ did not find any evidence that Plaintiff's depression or anxiety caused a functional limitation caused. R. 33. This is because, other than a vague statement that she "cannot handle big crowds," the records do not contain evidence of any limitation. R. 218. Rather, Plaintiff reported, on November 29, 2012, that she was able to socialize with others, attend church, pay attention, follow instructions, handle stress and changes in routine, and "get along with authority figures." R. 215-18. Her sister agreed with each these statements a week later. R. 223-27. Galvan completed a Function Report, with the help her lawyer, on April 4, 2013 and said that she did not handle stress very well, was depressed, and was afraid of being alone, but told Dr. Rossel later that month that the anti-anxiety medication was relieving her symptoms. R. 243, 1642. In fact, when Plaintiff last saw Dr. Haq on August 30, 2013, she denied being depressed, even though she was still experiencing anxiety. R. 1676.

At least through the time of her last documented treatment, Plaintiff's anxiety and stress appear to have been controlled with the medications she was prescribed. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."

---

[14] The ALJ incorrectly noted that she had not even been referred for any mental health care. R. 33. Plaintiff was advised to see a psychiatrist at her last visit with her oncologist on August 30, 2013. R. 1675.

*Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). She has pointed to no evidence that her depression or anxiety caused any non-exertional impairment that would affect her ability to work in any way, and a review of the record finds none. Because the record contains ample objective evidence supporting the ALJ's conclusion that Plaintiff's depression and anxiety are not "severe" and do not create any functional impairments, he was not required to order a consultative examination to develop the record further. *See Cornett,* 261 Fed. Appx. At 648–49; *see also Anderson v. Sullivan,* 887 F.2d 630, 634 (5th Cir. 1989) (finding "sufficient evidence . . . for the ALJ to have decided that the claimant is not disabled by pain and, therefore, no additional examination was warranted."). Even if he was obligated to order an examination, Plaintiff has not shown that the lack of a consultative examination prejudiced her because she has not shown it would have "adduced evidence that might have altered the result." *Kane*, 731 F.2d at 1220.

## CONCLUSION

For these reasons, the Commissioner's motion for summary judgment is **GRANTED**, and Galvan's motion for summary judgment is **DENIED.** Galvan's claims are **DISMISSED with prejudice.**

Signed on February 20, 2018, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**